Submitted on the record March 24, accused disbarred April 16, 1998

In re Complaint as to the Conduct of

## JAMES B. DONOVAN,
### *Accused.*

(OSB 96-6, 96-156, 96-157, 96-159, 96-160, 96-161, 96-172, 96-176, 96-177, 96-178, 97-20, 97-21, 97-22, 97-23, 97-24, 97-25, 97-26, 97-27, 97-62, 97-63, 97-64, 97-69, 97-70, 97-71, 97-94, 97-95, 97-111, 97-161; SC S43992)

957 P2d 575

Jane E. Angus, Assistant Disciplinary Counsel, Lake Oswego, for the Oregon State Bar.

No appearance *contra*.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, Kulongoski, and Leeson, Justices.*

PER CURIAM

---

* Graber, J., resigned March 31, 1998, and did not participate in the decision of this case.

## PER CURIAM

This is a *de novo* review of a lawyer disciplinary proceeding. ORS 9.536; Rules of Procedure (BR) 10.1 and 10.6. On October 16, 1997, the Oregon State Bar (the Bar) filed an amended formal complaint[1] against the accused for 28 violations of Disciplinary Rule (DR) 1-102(A)(3);[2] 28 violations of DR 2-106(A);[3] 28 violations of DR 6-101(B);[4] 28 violations of DR 7-101(A)(2);[5] 28 violations of DR 9-101(A);[6] 1 violation of DR 9-101(C)(3);[7] 3 violations of DR 9-101(C)(4);[8] 1 violation of

---

[1] Pursuant to BR 3.1, regarding temporary suspension during pendency of disciplinary proceedings, this court suspended the accused from the practice of law on February 20, 1997. The Bar filed its initial formal complaint against the accused on September 8, 1997.

[2] DR 1-102(A)(3) provides:

"It is professional misconduct for a lawyer to:

"Engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

[3] DR 2-106(A) provides:

"A lawyer shall not enter into an agreement for, charge or collect an illegal or clearly excessive fee."

[4] DR 6-101(B) provides:

"A lawyer shall not neglect a legal matter entrusted to the lawyer."

[5] DR 7-101(A)(2) provides:

"A lawyer shall not intentionally:

"Fail to carry out a contract of employment entered into with a client for professional services but the lawyer may withdraw as permitted under DR 2-110, DR 5-102 and DR 5-105."

[6] DR 9-101(A) provides, in part:

"All funds of clients paid to a lawyer or law firm, including advances for costs and expenses and escrow and other funds held by a lawyer or law firm for another in the course of work as lawyers, shall be deposited and maintained in one or more identifiable trust accounts in the state in which the law office is situated."

[7] DR 9-101(C)(3) provides, in part:

"A lawyer shall:

"Maintain complete records of all funds * * * of a client coming into the possession of the lawyer and render appropriate accounts to the lawyer's client regarding them."

[8] DR 9-101(C)(4) provides, in part:

"A lawyer shall:

"Promptly pay or deliver to a client as requested by the client the funds * * * in the possession of the lawyer which the client is entitled to receive."

DR 2-110(B)(2);[9] 1 violation of DR 3-101(B);[10] 1 violation of ORS 9.160;[11] and 29 violations of DR 1-103(C).[12]

■ The accused filed no answer and made no other appearance regarding the amended complaint. The trial panel entered an order of default on December 18, 1997. Accordingly, we deem the allegations of the Bar's amended formal complaint to be true. BR 5.8(a); *In re Bourcier*, 325 Or 429, 431, 939 P2d 604 (1997). Because of the default and the number of charges against the accused, the Bar submitted the matter to the trial panel without a formal hearing. The trial panel found the accused guilty of all the charges and disbarred him.[13]

Under ORS 9.536(2) and BR 10.1, this court is required to review the trial panel decision. We allowed the Bar's motion to submit the matter on the record without briefing or oral argument. ORAP 11.25(3)(b). The accused made no appearance in this court.

---

[9] DR 2-110(B)(2) provides:

"A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:

"The lawyer knows or it is obvious that the lawyer's continued employment will result in violation of a Disciplinary Rule "

[10] DR 3-101(B) provides:

"A lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction."

[11] ORS 9.160 provides:

"Except for the right reserved to litigants by ORS 9.320 to prosecute or defend a cause in person, no person shall practice law or represent that person as qualified to practice law unless that person is an active member of the Oregon State Bar."

[12] DR 1-103(C) provides:

"A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers, subject only to the exercise of any applicable right or privilege."

[13] The trial panel's opinion states that, "because of the repeated pattern of the same conduct, because of the egregious nature of the conduct of which the accused has been found guilty, and because the appropriate sanction for the misconduct of which the accused has been charged and found guilty is so obvious, no extended discussion of the various disciplinary rules is necessary [nor] would such a discussion serve any function here."

■ We conclude, as did the trial panel, that recitation of the pertinent facts underlying each of the Bar's causes of complaint would not benefit the Bar or the public. Suffice it to say that, on 27 occasions before he was suspended from the practice of law, and once thereafter, the accused agreed to perform legal services, accepted a fee to perform them and failed to complete the work. The accused repeatedly failed to deposit fees that he had received in his clients' trust account and did not return fees when his clients complained to him that he had not performed the legal work for which they had retained him. Neither did the accused respond to his clients' many requests for information nor return his clients' files when they asked him to do so. The accused overdrew his clients' trust account several times, and his bank closed that account on August 16, 1996, because of "negative activity." The accused eventually closed his office without notifying his clients and left no forwarding address or telephone number. The accused never responded to the Bar's repeated inquiries regarding the many complaints that it had received from the accused's clients. The record shows, and we find, that the accused is guilty of all of the charged misconduct.

■ In determining the appropriate sanction for ethical misconduct, we look to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) and Oregon case law. *In re Dickerson,* 322 Or 316, 324, 905 P2d 1140 (1995). Under ABA Standard 3.0, we consider (1) the ethical duty violated, (2) the lawyer's mental state, (3) the potential or actual injury caused by the misconduct, and (4) the existence of aggravating or mitigating factors. 322 Or at 324.

The accused violated numerous ethical duties to his clients. He received several notices informing him that he was failing to perform legal work that he had agreed to perform and for which he had accepted a fee, that on many occasions he had failed to deposit client funds into a client trust account and that the bank had closed his trust account, because it was overdrawn. The accused repeatedly failed to cooperate with the Bar's inquiries and investigations. The accused's failure to complete the work he had agreed to perform caused actual injury to his clients. The record reveals numerous aggravating factors, including multiple offenses

over a substantial period of time and failure to respond to or cooperate with the Bar's investigations. ABA Standard 9.22. There are no mitigating factors.

■        ABA Standard 4.11 provides that "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." Even a single act of intentional and dishonest appropriation of a client's trust funds in violation of DR 1-102(A)(3) warrants disbarment. *In re Whipple*, 320 Or 476, 488, 886 P2d 7 (1994). In this case, the accused engaged in multiple acts of intentional and dishonest appropriation of client trust funds.

■        Disbarment also can be appropriate when the accused fails to perform services for a client, engages in a pattern of neglect with respect to client matters, or abandons the practice of law and causes serious injury to a client. ABA Standard 4.41. The accused has demonstrated lack of diligence in all three respects, and several of his clients suffered serious injury as a consequence. *See In re Sousa*, 323 Or 137, 915 P2d 408 (1996) (attorney disbarred, among other reasons, for four violations of DR 6-101(B) and four violations of DR 1-103(C)). We need not belabor the obvious: The accused's misconduct compels disbarment.

The accused is disbarred.