579 S.E.2d 550

LAWYER DISCIPLINARY
BOARD, Complainant,

v.

John A. SCOTT, a member of The West
Virginia State Bar, Respondent.

No. 30090.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 26, 2003.

Decided March 14, 2003.

Lawrence J. Lewis, Chief Lawyer Disciplinary Counsel, Office of Disciplinary Counsel, Charleston, West Virginia, Attorney for Complainant.

Gregory H. Schillace, Clarksburg, West Virginia, Attorney for Respondent.

DAVIS, Justice:

This lawyer disciplinary proceeding against John A. Scott was brought to this Court by the Office of Disciplinary Counsel (hereinafter referred to as the "ODC") on behalf of the Lawyer Disciplinary Board (hereinafter referred to as the "Board"). The Boards's Hearing Panel Subcommittee determined that Mr. Scott committed twenty-two violations of the Rules of Professional Conduct. Consequently, the Board has recommended that Mr. Scott's license to prac-

tice law be annulled.[1] Mr. Scott does not contest the Board's findings of twenty-two violations of the Rules of Professional Conduct.[2] However, Mr. Scott contends that the annulment recommendation is too harsh. He therefore requests a lesser sanction. During oral argument, Mr. Scott suggested a ninety-day suspension. Based upon the parties' arguments to this Court, the record designated for our consideration, and the pertinent authorities, we conclude that Mr. Scott's law license should be suspended for three years. Furthermore, we conclude that Mr. Scott should be required to: (1) show that his diagnosed Bipolar II Disorder is under control prior to reinstatement; (2) show that he has legal malpractice coverage prior to reinstatement; (3) complete six hours of Continuing Legal Education in the area of ethics for at least two years after reinstatement; and (4) practice law under the supervision of another attorney for two years after reinstatement.

## I.

### FACTUAL HISTORY

On October 19, 2001, a seven count statement of charges was issued against Mr. Scott by an investigative panel. When the statement of charges was issued, Mr. Scott was serving as the duly elected Harrison County Prosecutor.[3] The matters complained of in the statement of charges cover Mr. Scott's conduct both before he was sworn in as a prosecutor on December 29, 2000, and after he took office as a prosecutor. The Board's determination that Mr. Scott violated twenty-two provisions of the Rules of Professional Conduct was based upon six of the counts in the statement of charges. The Board properly concluded that the remaining count was time-barred by Rule 2.14 of the Rules of

1. The Board has also recommended that should Mr. Scott seek reinstatement after the prescribed five year period under Rule 3.33 of the Rules of Lawyer Disciplinary Procedure, he should be required to: (1) show that his diagnosed Bipolar II Disorder is under control; (2) complete six hours of Continuing Legal Education in the area of ethics for at least two years after reinstatement; and (3) practice law under the supervision of another attorney for at least two years after reinstatement.

2. Mr. Scott stipulated to the Board's determination that twenty-two violations occurred.

3. The record indicates that Mr. Scott resigned from his position as Harrison County Prosecutor during the pendency of this disciplinary proceeding.

Lawyer Disciplinary Procedure. The facts underlying the six counts are heretofore summarized.

*First Charge.*[4] When Mr. Scott was sworn in as Harrison County Prosecutor in December of 2000, he had been informed that his license to practice law would be suspended effective November 15, 2000 as a result of his failure to pay State Bar dues. Even though Mr. Scott had been notified that his license would be suspended, he appeared as State's counsel before a grand jury proceeding. The Circuit Court of Harrison County was notified of the suspension on January 5, 2001. When questioned about the suspension by the three circuit judges of Harrison County, Mr. Scott lied and stated that he paid his bar dues the day before he was sworn in as prosecutor. Subsequently, Mr. Scott submitted falsified copies of a backdated check and certified mail receipt to the State Bar on January 2, 2001, wherein he attempted to show that he had paid his bar dues. Therefore, Mr. Scott contended that his license should be reinstated effective the day before he was sworn in as prosecutor. Meanwhile, a proceeding was brought by the Harrison County Public Defender's Office to challenge the status of Mr. Scott's law license. At a hearing on February 8, 2001, Mr. Scott again lied under oath by stating that he had sent a check to pay his bar dues in December of 2000.

4. The order of presentation of the statement of charges in this opinion does not exactly correspond with the seven counts filed against Mr. Scott because the Board found one count to be time-barred.

5. Rule 5.5(a) provides as follows:
 A lawyer shall not:
 (a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction.

6. Rule 8.4(d) provides as follows:
 It is professional misconduct for a lawyer to:
 (d) engage in conduct that is prejudicial to the administration of justice.

7. Rule 3.3(a)(1) provides as follows:
 (a) A lawyer shall not knowingly:
 (1) make a false statement of material fact or law to a tribunal.

8. Rule 3.3(a)(4) provides as follows:

As a result of the conduct in the first charge, the Board found that Mr. Scott violated Rule 5.5(a), by appearing before a grand jury as counsel for the State when his law license had been suspended.[5] Rule 8.4(d) was violated because Mr. Scott's conduct was prejudicial to the administration of justice.[6] As a result of Mr. Scott's presentation of falsified documents and false testimony, the Board additionally concluded that Rules 3.3(a)(1),[7] 3.3(a)(4),[8] 3.4(b),[9] and 8.4(c)[10] were violated.

*Second Charge.* The Board found that in November of 1997, Mr. Scott filed a civil action in circuit court on behalf of Troy and Debra Stire. The suit was against a building contractor who had performed work on the Stires' home. During the litigation, Mr. Scott failed to attend several hearings. Consequently, in January of 1999 opposing counsel filed a motion for sanctions against Mr. Scott. To avoid the sanction motion, Mr. Scott caused the action to be dismissed from circuit court. He later filed several smaller claims in magistrate court. While the claims were pending in magistrate court, Mr. Scott obtained a default judgment by misrepresenting to the magistrate that service of process had been made.[11]

Based upon Mr. Scott's actions and inactions on behalf of the Stire family, the Board found that Mr. Scott's failure to attend hearings and to diligently prepare his clients'

(a) A lawyer shall not knowingly:
(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

9. Rule 3.4(b) provides as follows:

 A lawyer shall not:
 (b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law.

10. Rule 8.4(c) provides as follows:

 It is professional misconduct for a lawyer to:
 (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

11. Eventually the Stires obtained new counsel and filed a malpractice action against Mr. Scott.

case violated Rule 1.3,[12] Rule 3.2,[13] Rule 3.4(c)[14] and Rule 3.4(d).[15] The Board further found that Mr. Scott's failure to inform the Stires of his true reason for recommending the dismissal of their case from circuit court violated Rule 1.4(b),[16] Rule 1.7(b)[17] and Rule 8.4(c).[18]

*Third Charge.* In December of 1999, Mr. Scott was supposed to file a criminal appeal on behalf of Albert J. Lehosit. When questioned on two separate occasions about the status of the appeal by Mr. Lehosit and his family members, Mr. Scott represented that an appeal had been filed. However, Mr. Scott failed to file the appeal. Based upon these actions, the Board found that Mr. Scott's failure to file the criminal appeal violated Rule 1.3.[19] The Board also determined that Rule 8.4(c)[20] was violated by Mr. Scott's misrepresentations about the status of the appeal.

*Fourth Charge.* In August of 1999, Mr. Scott informed David Cottingham he had a viable wrongful death suit in connection with the death of Mr. Cottingham's father. Mr. Scott eventually represented to Mr. Cotting-

ham that a lawsuit had been filed. In fact, no lawsuit was filed. In March of 2000, Mr. Cottingham retained Mr. Scott for a separate personal injury claim. Mr. Scott did nothing to advance the personal injury claim. When confronted by Mr. Cottingham about the status of the personal injury claim, Mr. Scott falsely represented that the insurance company settled the case for $2,500.00, and that Mr. Cottingham would receive a net recovery of $2,200.00. As such, the Board determined that Mr. Scott's false representations to Mr. Cottingham violated Rule 1.2(a),[21] Rule 1.3,[22] Rule 1.4(a),[23] Rule 1.4(b)[24] and Rule 8.4(c).[25]

*Fifth Charge.* Robert and Susan Gifford retained Mr. Scott for a personal injury claim in January of 1997. The first action filed by Mr. Scott was dismissed for failure to serve process on the defendant. Mr. Scott did not inform the Giffords of the dismissal of their case. The case was eventually reinstated, but was again dismissed in August of 1999 as exceeding the statute of limitations. Mr. Scott also failed to inform the Giffords of the second dismissal. After Mr. Scott was elected

**12.** Rule 1.3 provides as follows:

A lawyer shall act with reasonable diligence and promptness in representing a client.

**13.** Rule 3.2 provides as follows:

A lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client.

**14.** Rule 3.4(c) provides as follows:

A lawyer shall not:
(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.

**15.** Rule 3.4(d) provides as follows:

A lawyer shall not:
(d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party.

**16.** Rule 1.4(b) provides as follows:

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

**17.** Rule 1.7(b) provides as follows:

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to

another client or to a third person, or by the lawyer's own interests[.]

**18.** *See supra* note 10.

**19.** *See supra* note 12.

**20.** *See supra* note 10.

**21.** Rule 1.2(a) provides as follows:

(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

**22.** *See supra* 12.

**23.** Rule 1.4(a) provides as follows:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

**24.** *See supra* 16.

**25.** *See supra* 10.

as prosecutor in 2000, the Giffords sought to review their case in contemplation of retaining new counsel. The Giffords were informed by the circuit clerk's office that the case was dismissed. As to the fifth charge, the Board found that Mr. Scott's conduct in the Giffords' case violated Rule 1.3 [26] and Rule 8.4(c).[27]

*Sixth Charge.* Stephen Goff retained Mr. Scott to represent him in a civil case. In January of 1999, Mr. Scott informed Mr. Goff that a verbal settlement had been reached with opposing counsel. As a result of Mr. Scott's failure to submit a written settlement with the circuit court and after being duly warned by the circuit court, the court dismissed the case with prejudice in July of 1999. After the case was dismissed, Mr. Goff asked Mr. Scott about the status of his case. Mr. Scott failed to inform Mr. Goff the case was dismissed. Eventually, Mr. Goff checked with the circuit clerk's office and learned that the case was dismissed. Mr. Goff confronted Mr. Scott about the dismissal. Mr. Scott informed Mr. Goff that an appeal would be filed. No appeal was ever filed. After the appeal period had expired, Mr. Scott sought a writ of prohibition from this Court which was denied. With regard to the sixth charge, the Board determined that Mr. Scott's conduct in the Goff case violated Rule 1.3,[28] Rule 1.4(a),[29] Rule 1.4(b) [30] and Rule 8.4(c).[31]

## II.

### STANDARD OF REVIEW

Although the Board makes recommendations to this Court regarding sanctions to be imposed upon an attorney for ethical violations, we have held that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. pt. 3, *Committee on Legal Ethics of the West Virginia State Bar v. Blair,* 174 W.Va. 494,

327 S.E.2d 671 (1984). Our standard of review of proceedings before the Board was set out in syllabus point 3 of *Committee on Legal Ethics v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994), as follows:

A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

*Accord* Syl. pt. 3, *Lawyer Disciplinary Bd. v. Cunningham,* 195 W.Va. 27, 464 S.E.2d 181 (1995).

## III.

### DISCUSSION

The Board found that Mr. Scott violated twenty-two provisions of the Rules of Professional Conduct. We have previously indicated that "Rule 3.7 of the Rules of Lawyer Disciplinary Procedure ... requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence." Syl. pt. 1, *Lawyer Disciplinary Bd. v. McGraw,* 194 W.Va. 788, 461 S.E.2d 850 (1995). In this proceeding Mr. Scott does not contest the violations found by the Board. Therefore, we find no basis to disturb the Board's determination that Mr. Scott engaged in conduct that violated twenty-two provisions of the Rules of Professional Conduct.

Although Mr. Scott does not challenge the violations found by the Board, he does oppose the annulment sanction that was recommended. Mr. Scott has alleged factors which he contends are mitigating. In contrast, the

26. *See supra* 12.

27. *See supra* 10.

28. *See supra* note 12.

29. *See supra* note 23.

30. *See supra* note 16.

31. *See supra* note 10.

ODC takes the position that aggravating factors exist which outweigh any mitigating factors.

### A. Mitigating Factors

 Mitigating factors are one of the considerations enumerated under Rule 3.16, of the Rules of Lawyer Disciplinary Procedure for the Court to examine when imposing sanctions on an attorney.[32] To elaborate on this rule, we expressly hold that mitigating factors in a lawyer disciplinary proceeding "are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." American Bar Association, *Standards for Imposing Lawyer Sanctions,* 9.31 (1992). In several written opinions, this Court has referenced the mitigating factors proposed by American Bar Association in its *Standards for Imposing Lawyer Sanctions. See Lawyer Disciplinary Bd. v. Jarrell,* 206 W.Va. 236, 243, 523 S.E.2d 552, 559 (1999); *Committee on Legal Ethics of W. Va. State Bar v. Boettner,* 188 W.Va. 1, 4–5, 422 S.E.2d 478, 481–82 (1992). However, we have never formally adopted the mitigating factors proposed by the American Bar Association. Today, we take the opportunity to do so. Thus, we hold that mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.[33]

Mr. Scott identified eight of the foregoing mitigating factors as being applicable to his case: (1) absence of a dishonest or selfish motive; (2) personal or emotional problems; (3) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (4) inexperience in the practice of law; (5) physical or mental disability or impairment; (6) interim rehabilitation; (7) imposition of other penalties or sanctions; and (8) remorse. We discuss each of these factors in turn.

**1. Absence of a dishonest or selfish motive.** Mr. Scott contends that he did not convert any client funds for his personal use. He also asserts that he maintained professional liability insurance while in private practice and that some of his "clients were in a better financial position based upon [his] failings[.]" To the contrary, we find that the facts of this case are not without evidence of dishonest or selfish motive.

The clear pattern running throughout the charges against Mr. Scott is his willingness to lie. In each instance of dishonesty, Mr. Scott sought to protect *himself* from the consequences of his errors. Clearly the desire to hide the truth of his mistakes, by lying and submitting false documents, constitutes a dishonest or selfish motive. Therefore, we do not find this factor to be mitigating under the circumstances of this case.

**2. Personal or emotional problems.** Mr. Scott alleges that during the period in which he engaged in unprofessional conduct, he was suffering from Bipolar II Disorder, and that this caused him significant mental and emotional problems.[34]

---

**32.** *See* Rule 3.16(4) ("In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court or Board shall consider ... the existence of any ... mitigating factors.").

**33.** The mitigating factors listed are not to the exclusion of any other mitigating factor that a given case may present.

**34.** Dr. Mohammed Salman, a psychiatrist, diagnosed Mr. Scott as suffering from Bipolar II Disorder. Dr. Salman testified at the hearing in this matter. Dr. Salman gave the following definition of Bipolar II Disorder:

Bipolar II Disorder is a form of mood disorders. Mood disorders are classified under major depression, which is a major illness, a progressive illness, and then the other mood disorders include Bipolar I Disorder and Bipolar II.... Bipolar II Disorder is a milder form of the mood disorder and it is characterized by hypomanic symptoms. Instead of the manic

The ODC contends that Mr. Scott's Bipolar II Disorder is not a mitigating factor in this case. The position taken by the ODC is that Mr. Scott's conduct involved dishonesty, *i.e.*, lying to clients, judges, officers of the court, and falsifying documents. Moreover, the ODC argues that Mr. Scott's treating psychiatrist testified that dishonesty *is not* a symptom of Bipolar II Disorder.

We agree in part with the ODC. In our review of the facts we find that Mr. Scott has failed to persuasively connect his Bipolar II Disorder with all of the conduct involved in this specific case. Arguably, the disorder may have played a role in Mr. Scott's lack of diligence with his civil cases and other matters. Consequently, the disorder would appear to be a mitigating factor on the issue of lack of diligence. *See Lawyer Disciplinary Bd. v. Keenan*, 208 W.Va. 645, 542 S.E.2d 466 (2000) (Bipolar Disorder found to be a mitigating factor). However, nothing in Mr. Scott's brief indicates how Bipolar II Disorder caused him to engage in dishonesty. No evidence was adduced that connected Mr. Scott's Bipolar II disorder to his pattern of lying and falsification to conceal his lack of diligence.[35]

**3. Full and free disclosure to disciplinary board or cooperative attitude toward proceedings.** Mr. Scott states that he has cooperated fully with the Board. As an example of his cooperation, Mr. Scott has noted that he voluntarily participated in the preparation of the stipulated findings of fact and conclusions of law recommended by the Board. We agree with Mr. Scott that he has established this factor as mitigating.

It appears that throughout the disciplinary proceedings Mr. Scott has been open and honest. Nothing in the record suggests that he was evasive or less than candid with the ODC or any disciplinary officer. *See, e.g., Lawyer Disciplinary Bd. v. Artimez*, 208 W.Va. 288, 298, 540 S.E.2d 156, 166 (2000) ("[T]he record demonstrates that Mr. Artimez has fully cooperated with the Board's

der.[36] Therefore, we do not find that Mr. Scott has established interim rehabilitation as a mitigating factor in this case.

**7. Imposition of other penalties or sanctions.** Mr. Scott's brief was apparently filed with this Court before he resigned as Harrison County Prosecutor. As a result, he addressed this factor as another form of penalty or sanction that would flow from the decision of this Court. In other words, Mr. Scott alleged that he would be unable to continue in the office of prosecutor, based upon the penalty that may be imposed by this Court.[37] Although Mr. Scott's brief did not address the issue of his resignation as prosecutor, the issue was discussed during oral argument. We believe that Mr. Scott's voluntary resignation from the office of prosecutor is a mitigating factor in this case.

**8. Remorse.** Mr. Scott contends that his willingness to stipulate to the violations in this case demonstrate his remorsefulness. We agree with Mr. Scott that his conduct since the filing of the charges clearly show remorse. In addition to his stipulating to the charges, Mr. Scott voluntarily removed himself from the office of prosecutor for Harrison County.

### B. Aggravating Factors

■ Aggravating factors are considerations enumerated under Rule 3.16 of the Rules of Lawyer Disciplinary Procedure for the Court to examine when considering the imposition of sanctions.[38] Elaborating on this rule, we hold that aggravating factors in a lawyer disciplinary proceeding "are any considerations, or factors that may justify an increase in the degree of discipline to be imposed." American Bar Association, *Standards for Imposing Lawyer Sanctions*, 9.21 (1992).

Here, the ODC has cited as an aggravating factor an incident that apparently occurred around the time the Statement of Charges was brought against Mr. Scott. The ODC has indicated that Mr. Scott misrepresented to the Sheriff of Harrison County and an assistant prosecutor that a special grand jury had been scheduled on a specific date. In fact, no grand jury was scheduled. This incident caused substantial work to be done by the sheriff and assistant prosecutor in preparation for the grand jury.

Another incident cited by the ODC as an aggravating factor occurred in January of 2002 when Mr. Scott wrongfully obtained an indictment against a defendant whose case was resolved in magistrate court in 2000. The ODC has reported that when Mr. Scott was alerted to the problem, he proceeded to mislead the circuit court judge into believing that the indictment was a drug indictment and had it sealed. Eventually, Mr. Scott prepared a dismissal order for the indictment. The dismissal order drafted by Mr. Scott contained a statement saying that the parties had agreed to have the case resolved in magistrate court. However, the ODC contacted the defendant named in the indictment. The ODC quickly learned that the defendant knew nothing about the indictment nor the dismissal order.[39]

■ In addition to the aggravating factors suggested by the ODC, this Court finds two other circumstances that are aggravating factors in this case: the fact that Mr. Scott violated the Rules of Professional Conduct while he held a public office, and that he demonstrated a pattern of misconduct.

In *Committee On Legal Ethics of West Virginia State Bar v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989), the respondent lawyer argued that holding public office when ethical violations occurred should not be an aggravating circumstance in a lawyer disciplinary proceeding. This Court rejected the argument and held, in syllabus point 3 of *Roark*,

---

**36.** This issue is more fully discussed in the Aggravating Factors section of this opinion.

**37.** The ODC's brief makes clear that Mr. Scott resigned from his position as a prosecutor effective January 31, 2003.

**38.** *See* Rule 3.16(4) ("In imposing a sanction after a finding of lawyer misconduct, unless oth-

erwise provided in these rules, the Court or Board shall consider ... the existence of any aggravating ....").

**39.** The ODC also listed as another aggravating factor a sanction that was imposed on Mr. Scott by a circuit court judge for missing a hearing.

that "[e]thical violations by a lawyer holding a public office are viewed as more egregious because of the betrayal of the public trust attached to the office." In the instant proceeding, Mr. Scott was an elected official serving as the prosecuting attorney of Harrison County when he violated the following rules: Rule 5.5(a), by appearing before a grand jury as counsel for the State when his license had been suspended; Rule 8.4(d) by engaging in conduct that was prejudicial to the administration of justice; and Rules 3.3(a)(1), 3.3(a)(4), 3.4(b), and 8.4(c) by creating and presenting falsified documents and false testimony.

In the *Standards for Imposing Lawyer Sanctions,* the American Bar Association has recognized a "pattern of misconduct" as an aggravating factor in a lawyer disciplinary proceeding. *See In re LeBlanc,* 713 So.2d 449 (La.1998) (pattern of misconduct was aggravating factor causing lawyer's suspension); *Matter of Disciplinary Proceedings Against Dann,* 136 Wash.2d 67, 960 P.2d 416 (1998) (pattern of misconduct was aggravating factor in lawyer's suspension). Mr. Scott engaged in a serious pattern of misconduct that involved constant lying. In at least four of the counts proven against Mr. Scott he engaged in lying to cover up his mistakes. We are extremely concerned by Mr. Scott's repeated willingness to cover up his shortcomings by lying to clients, judges, and officers of the court. We observed in *Gum v. Dudley,* 202 W.Va. 477, 487, 505 S.E.2d 391, 401 (1997), that:

> Our adversary system for the resolution of disputes rests on the unshakable foundation that truth is the object of the system's process which is designed for the purpose of dispensing justice.... Even the slightest accommodation of deceit or a lack of candor in any material respect quickly erodes the validity of the process. As soon as the process falters in that respect, the people are then justified in abandoning support for the system in favor of one where honesty is preeminent.

(*quoting United States v. Shaffer Equipment Co.,* 11 F.3d 450, 457 (4th Cir.1993)). Honesty must always be preeminent in West Virginia's legal system.

The American Bar Association's *Standards for Imposing Lawyer Sanctions* has also recognized "multiple offenses" as an aggravating factor in a lawyer disciplinary proceeding. *See People v. Hindman,* 958 P.2d 463 (Colo.1998) (disbarred lawyer had multiple offenses as an aggravating factor); *In re Conduct of Donovan,* 327 Or. 76, 957 P.2d 575 (1998) (disbarred lawyer had multiple offenses as an aggravating factor); *Matter of Disciplinary Proceedings Against Dann,* 136 Wash.2d 67, 960 P.2d 416 (1998) (multiple offenses was aggravating factor in lawyer's suspension). Mr. Scott stipulated to twenty-two violations of the Rules of Professional Conduct. The number of violations found must be placed in their proper context. That is, the violations do not merely reflect minor infractions. The violations reflect grave dishonesty in the form of lying in and out of court and falsifying court documents.

### C. Appropriate Sanction

The Board has recommended that Mr. Scott's license be annulled. Mr. Scott urges leniency in the form of a ninety-day suspension. We have held that:

> In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syl. pt. 3, *Committee on Legal Ethics v. Walker,* 178 W.Va. 150, 358 S.E.2d 234 (1987). This Court has also made clear that "[d]isbarment of an attorney to practice law is not used solely to punish the attorney but is for the protection of the public and the profession." Syl. pt. 2, *In re Daniel,* 153 W.Va. 839, 173 S.E.2d 153 (1970).

We have carefully examined factors Mr. Scott has offered as mitigating, as well as factors that we found were aggravating. In balancing the mitigating and aggravating factors, we are compelled to find that the mitigating factors are sufficient to impose a sanction less than the recommendation of annulment. Although we are extremely dis-

turbed by Mr. Scott's willingness to cover up his errors through dishonesty, we believe that his inexperience as a lawyer and his complete willingness to accept total responsibility for his actions require that his punishment be slightly less than annulment.

Our decision to suspend Mr. Scott's license is consistent with prior decisions of this Court involving misconduct by attorneys who were public officials. Our prior cases reveal that in only two incidents have we imposed the ultimate penalty of annulment. *See Committee on Legal Ethics of West Virginia State Bar v. Grubb*, 187 W.Va. 608, 420 S.E.2d 744 (1992) (lawyer was judge who was convicted in federal court of criminal charges and had his law license annulled); *Committee on Legal Ethics of the West Virginia State Bar v. Moore*, 186 W.Va. 127, 411 S.E.2d 452 (1991) (lawyer pled guilty to criminal acts that grew out of his position as governor and had his law license annulled). *See also Committee on Legal Ethics of the West Virginia State Bar v. White*, 189 W.Va. 135, 428 S.E.2d 556 (1993) (lawyer was prosecuting attorney who pled guilty to possession of cocaine and had his law license suspended for two years); *Committee on Legal Ethics of the West Virginia State Bar v. Boettner*, 188 W.Va. 1, 422 S.E.2d 478 (1992) (lawyer was state senator who pled guilty to evading payment of federal income taxes and had his law license suspended for three years); *Committee On Legal Ethics of West Virginia State Bar v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989) (lawyer was prosecuting attorney and former mayor who pled guilty to possession of cocaine and had his law license suspended for three years).

## IV.

### CONCLUSION

We impose the following sanctions. Mr. Scott's law license is suspended for three years. Furthermore, we conclude that Mr. Scott is required to: (1) show that his diagnosed Bipolar II Disorder is under control prior to reinstatement of his law license; (2) show that he has adequate legal malpractice coverage prior to reinstatement of his law license; (3) complete six hours of Continuing Legal Education in the area of ethics for at least two years after reinstatement; and (4) practice law under the supervision of another attorney for two years after reinstatement.

License to practice law in West Virginia suspended for three years with additional sanctions.

Justice McGRAW dissents and reserves the right to file a dissenting opinion.

McGRAW, Justice, dissenting:

I dissent because I believe that a fixed term for suspension is inappropriate in this case. I agree that the Bar and this Court have a duty to protect the public. However, I also believe that where illness is the basis for limiting an attorney's practice, the period of limitation should be determined by the duration of the illness, rather than by some arbitrary standard. As the majority observed, "[d]isbarment of an attorney to practice law is not used solely to punish the attorney but is for the protection of the public and the profession." Syl. pt. 2, *In re Daniel*, 153 W.Va. 839, 173 S.E.2d 153 (1970).

I agree that the attorney here should not practice law until he can show that his condition has improved. However, I would permit reinstatement of the attorney's law license upon a showing that his illness is under control and will not adversely affect the public interest. Furthermore, I believe that my position is consistent with the logic of the majority opinion.

The majority opinion adopts the ABA's list of mitigating factors to consider in lawyer disciplinary procedures. After analyzing the mitigating factors in this case, the majority concludes that the suggested penalty of annulment of his license was an inappropriate sanction. I feel that a logical extension of the majority's reasoning is that the attorney should have his license reinstated once he can demonstrate that his illness is under control. Therefore, I must respectfully dissent.