FILED

**November 5, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**Lawyer Disciplinary Board,**
**Petitioner,**

**vs) No. 24-92**

**Thomas H. Evans, III,**
**a member of The West Virginia State Bar,**
**Respondent.**

**MEMORANDUM DECISION**

The Lawyer Disciplinary Board ("Board") initiated this lawyer disciplinary proceeding against the respondent, Thomas H. Evans, III, through a formal statement of charges filed on February 20, 2024. Following an evidentiary hearing, the Board's Hearing Panel Subcommittee ("HPS") presented its recommended disposition to this Court. Finding that the evidence supported the charges, the HPS recommended that Mr. Evans's law license be suspended for a period of three months with automatic reinstatement and that upon reinstatement, he be placed on one year of supervised practice by an active attorney in his geographic area as agreed upon by the Office of Disciplinary Counsel ("ODC"). The HPS also recommended other sanctions including additional continuing legal education classes and payment of the costs of these proceedings. Although the ODC and Mr. Evans consented to these proposed sanctions, this Court did not immediately concur and, instead, scheduled this matter for oral argument, directing the parties to file briefs in support of their respective positions.[1]

This Court has now carefully considered the briefs and oral arguments of the parties, the submitted record, and pertinent authorities. Upon review, we find that the record supports the recommendation of the HPS. Accordingly, we impose the recommended sanctions as set forth herein. Because there is no substantial question of law and no prejudicial error, a memorandum decision is appropriate pursuant to Rule 21 of the Rules of Appellate Procedure.

---

[1] The ODC is represented by Rachael L. Fletcher Cipoletti, Esq., Chief Lawyer Disciplinary Counsel, and Andrea J. Hinerman, Esq., Senior Lawyer Disciplinary Counsel. Timothy P. Lupardus, Esq., is counsel for Mr. Evans.

1

Mr. Evans has been a member of the West Virginia State Bar since 2005 and practices in Oceana, West Virginia. This disciplinary proceeding arose from four complaints made against Mr. Evans by parties involved in a partition suit that was filed in Wyoming County in 2014. At that time, Mr. Evans was retained by Margaret Shields and her brother, Steve Rife, to file a partition suit against their brother, Dale Rife. Each sibling owned a one-third undivided interest in .42 acres of property located in the Baileysville District of Wyoming County. Margaret Shields and Steve Rife wished to sell the property to a third party, but Dale Rife would not agree to the sale, so Mr. Evans filed a petition to partition real estate in the Circuit Court of Wyoming County, seeking to partition through sale of the property. At a hearing approximately three weeks after suit was filed, Mr. Evans reported to the circuit court that service of the petition upon Dale Rife, who lived in North Carolina, by regular mail and a process server, had been unsuccessful and that service by publication would be attempted. Service was then attempted through publication in two newspapers in North Carolina. The record is unclear as to when Dale Rife received notice of the lawsuit, but he never made an appearance until after the final hearing was held. In the meantime, commissioners were appointed to appraise the property. The commissioners valued the property at $36,000 and reported that it could not be partitioned in kind. Thereafter, the circuit court entered default judgment against Dale Rife, ruling that Margaret Shields and Steve Rife acquired the one-third interest owned by Dale Rife and obtained quiet title to the entire property. The circuit court ordered that payment for one-third of the value of the property be deposited in an interest-bearing account at a designated bank for the use and benefit of the Clerk of the Circuit Court of Wyoming County until claimed by Dale Rife. Subsequently, Dale Rife made his first appearance in the case and filed a motion for reconsideration, which the circuit court denied.

The circuit court's order denying Dale Rife's motion for reconsideration was entered on September 2, 2015. On October 15, 2015, Mr. Evans filed a deed conveying Dale Rife's one-third interest in the property to Margaret Shields and Steve Rife. The next day, Dale Rife filed a notice of intent to appeal the circuit court's September 2, 2015, order to this Court. While Dale Rife's appeal was pending in this Court, Margaret Shields and Steve Rife sold the property to Timothy and Erma Mutters. Mr. Evans prepared a deed that conveyed the property to the Mutters on December 4, 2015. Dale Rife's portion of the proceeds from the sale, which was $13,000,[2] was not deposited with the circuit court clerk and was never made available to him.

By memorandum decision entered on November 18, 2016, this Court reversed the circuit court's decision in favor of Margaret Shields and Steve Rife and remanded the

---

[2] In some places in the record, the amount due to Dale Rife is listed as $12,000. However, one circuit court order in the record explains that Dale Rife's share was $12,000 "plus a gratuitous $1000," so we assume the amount due was $13,000 for purposes of this decision.

matter back to the circuit court with directions to vacate the default judgment entered against Dale Rife. *See Rife v. Shields*, 2016 WL 6819045 (No. 15-0975 Nov. 18, 2016) (memorandum decision). This Court found that the circuit court lacked personal jurisdiction over Dale Rife rendering the default judgment void and unenforceable. *Id.* at *4. In 2017, Dale Rife filed suit against Mr. Evans,[3] Margaret Shields and her husband,[4] Steve Rife, and the Mutters, asserting claims for negligence, civil conspiracy, fraud, intentional infliction of emotional distress and slander of title based on the actions taken by Mr. Evans and the other named defendants during the 2014 civil action. Although the 2014 case was remanded back to the circuit court in 2016, an order vacating the August 27, 2015, default judgment against Dale Rife was not entered until January 30, 2018, after Dale Rife filed suit. Despite that order, the property remained in the legal possession of the Mutters until January 3, 2022, when the circuit court entered an order that voided the October 15, 2015, and December 4, 2015, deeds.

According to the complaint filed by Margaret Shields in this disciplinary proceeding, she believed that Mr. Evans was representing her and Steve Rife in the 2017 civil action filed by Dale Rife. Mr. Evans disputed that claim, asserting that like him, Margaret Shields and Steve Rife were self-represented during the 2017 civil action. Yet, Mr. Evans admitted that he prepared pro se answers in the 2017 civil action on behalf of Margaret Shields and Steve Rife and signed their names,[5] causing a notary public to notarize false verifications. Further, he advised Margaret Shields and Steve Rife to not appear and testify at an April 2022 hearing in the 2017 action. Ultimately, judgment was entered against Mr. Evans, Margaret Shields, and the Mutters in the 2017 action,[6] based on the circuit court's finding that Dale Rife had been deprived of his property for seven years. The circuit court granted $13,000 in sanctions against Mr. Evans on behalf of Dale Rife. The circuit court further awarded Dale Rife $23,867.50 for the attorney fees and costs he incurred after this Court reversed the default judgment entered against him in the 2014 partition suit, $10,000 in property loss damages, and $10,000 in punitive damages. In apportioning liability among the defendants, the circuit court found Mr. Evans to be liable for 60% of the damages and entered judgment against him in the amount $26,120.50.

---

[3] The complaint named both Mr. Evans's law practice and Mr. Evans individually as defendants. Both defendants are simply referred to as "Mr. Evans" in this decision.

[4] No allegations were made against Margaret Shields's husband and eventually, he was dismissed from the case.

[5] Mr. Evans indicated that he traced the names from documents Margaret Shields and Steve Rife had previously signed which he had in a file in his office.

[6] Steve Rife lived out of state and was dismissed from the case for lack of *in personam* jurisdiction.

Margaret Shields further asserted in her complaint filed with the ODC that during the pendency of the 2017 action, Mr. Evans kept assuring her that he had everything under control and that there would be no repercussions for her. According to Margaret Shields, Mr. Evans told her that he could get the circuit court judge to "sign anything for him" and that he would be assuming the judge's position when he retired. When that did not occur, Margaret Shields said that Mr. Evans "ran for judge and told her that when he was elected, he would make the case go away." Margaret Shields also reported that Mr. Evans told her that "he knows a lot of unsavory people and it would only cost him a couple thousand dollars to have the issues with Dale Rife taken care of." Additionally, Margaret Shields indicated that Mr. Evans failed to present timely appraisals of the property during the 2017 action and failed to communicate with her about various matters in the case.

Steve Rife filed a separate complaint with the ODC but made many of the same allegations against Mr. Evans as Margaret Shields. Both reported that Mr. Evans had been given $13,000 in cash to pay Dale Rife for his portion of the property but that Dale Rife never accepted the money. During the proceedings in this matter, Mr. Evans acknowledged that the money designated for Dale Rife was not deposited with the clerk of the court nor was it deposited into his client trust account. He said that instead, he placed the cash in his safe in his office while negotiating the case but claimed that when the matter "fell apart," he returned the money to Margaret Shields. Steve Rife also reported in his complaint that he believed the 2017 case had been resolved until he received a Notice of Default Judgment after he did not appear for a hearing in the 2017 case.[7]

A third complaint against Mr. Evans was filed by Joshua T. Thompson, the attorney who represented Dale Rife in the 2017 civil action.[8] Mr. Thompson reported that Mr. Evans had deprived his client, Dale Rife, of his real property for more than seven years through "fraudulent schemes" and that in the 2017 action, Mr. Evans was found civilly liable for negligence, civil conspiracy, fraud, intentional infliction of emotional distress and slander of title. Mr. Thompson relayed that Mr. Evans was held responsible for 60% of the damages from said liability and that Mr. Evans's conduct contributed to the delay in the restoration of his client's property rights.

Finally, Dale Rife filed a complaint with the ODC recounting many of the same allegations as the other complainants. He noted that the circuit court found in the final

---

[7] This default judgment was later set aside, and as noted above, Steve Rife was dismissed from the 2017 action.

[8] Pursuant to Rule 8.3(a) of the West Virginia Rules of Professional Conduct, "A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority."

4

order in the 2017 action that Mr. Evans "showed a pattern of neglect, willful and repeated disregard of Dale Rife's property rights, and a willful and repeated disregard for court orders and deadlines." Dale Rife also alleged that Mr. Evans failed to provide the declarations page for his professional liability insurance thereby preventing him from filing a claim against Mr. Evans for damages. In a supplemental letter, Dale Rife reported that Mr. Thompson had served a Writ of Execution and a Writ of Suggestion upon Mr. Evans and that Mr. Evans ignored both requests and never responded to either. Dale Rife further reported that "it is believed that someone at the bank tipped off [Mr. Evans] and he withdrew money from his bank account to prevent the writ of suggestion from being executed." Dale Rife provided a copy of a check for $96.55 from Mr. Evans's bank account to be applied toward the judgment awarded to him. Dale Rife also indicated he had filed a Notice of Lis Pendens lien against Mr. Evans's personal residence.

On September 12, 2023, Mr. Evans gave a sworn statement to the ODC, after requesting and receiving an extension of time to appear. He admitted that he did not respond to the complaints filed by Mr. Thompson and Dale Rife. His excuse for failing to respond was that these complaints were the same as those filed by Margaret Shields and Steve Rife and he had already responded "in detail" to their complaints. Mr. Evans said that this case had "consumed [his] life for the last couple of years and not in a good way," that he became "overwhelmed," and that he felt like he "had already answered it."

The evidentiary hearing before the HPS was held on November 15, 2024. Testimony was provided by Margaret Shields, Dale Rife, and Mr. Evans. At the conclusion of the hearing, the HPS rendered its report and recommended sanctions. With respect to Margaret Shields, the HPS found that Mr. Evans failed to act with diligence thereby violating Rule 1.3 of the West Virginia Rules of Professional Conduct. Rule 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client." By failing to keep Margaret Shields informed and not explaining matters to the extent reasonably necessary for her to make informed decisions regarding her representation, the HPS found that Mr. Evans violated Rule 1.4 of the Rules of Professional Conduct. Rule 1.4 provides:

> Communication.
>  (a) A lawyer shall:
>      . . . .
>      (3) keep the client reasonably informed about the status
> of the matter;
>      . . . .
>  (b) A lawyer shall explain a matter to the extent reasonably
>  necessary to permit the client to make informed decisions
>  regarding the representation.

5

By failing to deposit into his client trust account the $13,000 he received from Margaret Shields for Dale Rife's interest in the property and instead keeping the funds in a safe in his office, the HPS found that Mr. Evans violated Rule 1.15(a) of the Rules of Professional Conduct, which provides:

> A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account designated as a "client's trust account" in an institution whose accounts are federally insured and maintained in the state where the lawyer's office is situated, or in a separate account elsewhere with the consent of the client or third person. Such separate accounts must comply with State Bar Administrative Rule 10 with regard to overdraft reporting. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

The HPS further found that Mr. Evans violated Rule 1.15(d) by failing to promptly notify Dale Rife of the receipt of funds in which he had an interest. Rule 1.15(d) provides:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and upon request by the third person, shall promptly render a full accounting regarding such property.

For advising Margaret Shields, who was not his client in the 2017 case, to not testify at an April 2022 hearing, the HPS found that Mr. Evans violated Rule 3.4 of the Rules of Professional Conduct which addresses "Fairness to Opposing Party and Counsel" and provides:

> A lawyer shall not:
> . . . .
> (f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless:
> > (1) the person is a relative or an employee or other agent of a client; and

6

> (2)  the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

For his admission to preparing a pro se answer in the 2017 action for Margaret Shields and signing her name on the answer, certificate of service, and verification, the HPS found that Mr. Evans committed misconduct in violation of Rules 8.4(c) and (d) of the Rules of Professional Conduct, which provide:

> It is misconduct for a lawyer to:
> . . . .
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
> (d) engage in conduct that is prejudicial to the administration of justice.

With regard to his actions toward Steve Rife, the HPS found that Mr. Evans failed to act with diligence in violation of Rule 1.3 and failed to keep Steve Rife informed and did not explain matters to the extent necessary for him to make informed decisions in violation of Rules 1.4(a)(3) and (b).  For preparing an answer for Steve Rife in the 2017 action and signing his name, Mr. Evans was again found to have violated Rules 8.4(c) and (d) and for advising Steve Rife to not testify in the 2017 case, the HPS found that Mr. Evans violated Rule 3.4(f).

As for Mr. Thompson's complaint, Mr. Evans was found to have violated Rule 8.1 of the Rules of Professional Conduct for his failure to respond to the complaint upon receipt from the ODC and for his failure to answer a second letter from the ODC seeking a response.  Rule 8.1 provides:

> [A] lawyer in connection with . . . a disciplinary matter, shall not:
> . . . .
> (b)  . . . knowingly fail to respond to a lawful demand for information from . . . disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

Mr. Evans was also found to have engaged in dilatory conduct that contributed to the delay in the restoration of Dale Rife's property rights in violation of Rule 8.4(d) of the Rules of Professional Conduct.

Finally, with respect to his conduct towards Dale Rife, the HPS found a second violation of Rule 8.1(b) because Mr. Evans also failed to respond to his complaint upon

receipt from the ODC. The HPS further found that Mr. Evans's dilatory conduct in representing Margaret Shields, Steve Rife, and himself which resulted in the delay in the restoration of Dale Rife's property rights was yet another violation of Rule 8.4(d).

Based on these findings and an Agreed Joint Stipulation entered by the ODC and Mr. Evans whereby Mr. Evans agreed to a three-month suspension from the practice of law, the HPS submitted the following proposed sanctions to this Court:

A. That [Mr. Evans's] law license be suspended for a period of three (3) months, with automatic reinstatement of his license to practice law pursuant to the provisions of and requirements of Rule 3.31 of the Rules of Lawyer Disciplinary Procedure;

B. That [Mr. Evans] be required to take an additional six (6) hours of Continuing Legal Education in the area of legal ethics and law office management during the 2024-2026 reporting period;

C. That [Mr. Evans] be required to pay the costs of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure; and

D. That upon [Mr. Evans's] reinstatement, he be place on one (1) year of supervised practice by an active attorney in his geographic area in good standing with the West Virginia State Bar and agreed upon by the ODC.

As noted above, this Court did not concur with the recommended sanctions upon receipt and, accordingly, scheduled this matter for briefing and oral argument.

Upon review, we defer to the Board's factual findings and respectfully consider its recommendations. However, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorney's licenses to practice law." Syl. Pt. 3, *Committee on Legal Ethics of the W. Va. State Bar v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984). Therefore,

[a] *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own

8

independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. Pt. 3, *Committee on Legal Ethics of the W. Va. State Bar v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

There is no dispute as to the findings made by the HPS regarding Mr. Evans's multiple violations of the West Virginia Rules of Professional Conduct. The focus here is on the appropriate sanctions for his misconduct. Rule 3.16 of the West Rules of Lawyer Disciplinary Procedure sets forth the factors to be considered in making our decision. As we have explained:

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. Pt. 4, *Office of Lawyer Disc. Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998). In addition, we remain mindful that "attorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice[.]" *Committee on Legal Ethics of the W. Va. State Bar v. Keenan*, 192 W. Va. 90, 94, 450 S.E.2d 787, 791 (1994). To that end, the sanctions we impose are not solely aimed at punishing the attorney but serve to protect the public and the profession. *See* Syl. Pt. 2, *In re Daniel*, 153 W. Va. 839, 173 S.E.2d 153 (1970).

Turning to the first *Jordan* factor, the HPS found that Mr. Evans violated nine separate provisions of the Rules of Professional Conduct, some of them multiple times, but all within the context of one property dispute, albeit in two separate civil actions. Mr. Evans clearly violated duties owed to his clients, the public, the legal system, and the legal profession. Likewise, Mr. Evans clearly acted intentionally and knowingly when he violated the rules, which is another factor we must consider. Ultimately, Mr. Evans admitted that he did not respond to requests for information from the ODC and he stipulated

9

to the alleged violations with respect to his clients and the opposing party with two exceptions. He maintained that he never told Margaret Shields that if he were elected judge, he would make the 2017 case go away, and he insisted that he had returned to her the $13,000 she gave him for Dale Rife's share of the subject property during the 2014 case. Regarding the amount of injury caused by Mr. Evans's conduct, we agree with the HPS's conclusion that it was "great." A property dispute that began in 2014 was not resolved until 2023 and for seven of those years, one of the owners was deprived of his legal interest in the subject property, almost solely as a result of Mr. Evans's actions. Mr. Evans's conduct not only impacted the property rights of his clients and their brother but also caused all parties involved to have a negative view of lawyers and the legal system. Notably, Mr. Evans has not yet satisfied the judgment entered against him by the circuit court in the 2017 action.[9]

Finally, we must consider any aggravating or mitigating factors. Aggravating factors are "any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. Pt. 4, in part, *Lawyer Disc. Bd. v. Scott*, 213 W. Va. 209. 579 S.E.2d 550 (2003). Conversely, "[m]itigating factors are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." *Id.*, syl. pt. 2. The parties stipulated that the aggravating factors are Mr. Evans's substantial experience in the practice of law, the pattern of misconduct he exhibited by neglecting his clients' cases, and his commission of multiple disciplinary offenses. The mitigating factors agreed upon are remorse, the imposition of other penalties and sanctions by the circuit court in the 2017 action,[10] and the absence of a disciplinary record. It is noted that Mr. Evans was issued one prior admonishment in June 2022 for violating Rule 8.1(b) of the West Virginia Rules of Professional Conduct,[11] but that rebuke resulted from his failure to respond to a request

_____

[9] In his brief filed with this Court, Mr. Evans advised that he is attempting to sell real estate to pay the judgment entered against him.

[10] As discussed above, judgment was entered against Mr. Evans in the 2017 case in the amount of $26,120.50, and he was also ordered to pay $13,000 in sanctions.

[11] Rule 8.1 provides, in pertinent part:

> An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not . . . (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

for information from the ODC in this proceeding, so prior to this matter, Mr. Evans had no disciplinary record.

In determining that this matter warranted further consideration, this Court was concerned with whether the proposed sanctions were sufficient especially considering Mr. Evans's mishandling of the $13,000 given to him by Margaret Shields during the 2014 case for Dale Rife's interest in the subject property. Notably, the record shows that during the hearing before the HPS, Mr. Evans reiterated that the money had been returned, and he denied committing fraud or stealing anyone's money. Although Margaret Shields reported that Mr. Evans kept the money, she testified during an April 2022 hearing in circuit court that Mr. Evans returned the funds to her. Thus, ODC concluded during its investigation that there was insufficient evidence to establish that Mr. Evans misappropriated or misused the funds.[12]

We have had very few disciplinary matters involving attorneys charged with mishandling funds in the same manner as Mr. Evans. In one case where an attorney purportedly kept client funds in a safe in his office, this Court imposed a one-year suspension. *See Lawyer Disc. Bd. v. Haught*, 233 W. Va. 185, 757 S.E.2d 609 (2014). However, that attorney was also charged with other ethical violations involving another client, including making false statements of material fact and misrepresenting the existence of an attorney-client relationship. *Id.* at 197, 757 S.E.2d at 621. While Mr. Evans was also charged with other misconduct, his violations all related to one matter as discussed above. Nonetheless, Mr. Evans's failure to safekeep client funds along with his lack of diligence, failure to effectively communicate with his clients, dishonesty, and misrepresentation certainly warrant a suspension. The three-month suspension proposed by the HPS is consistent with the disposition in other disciplinary cases involving similar violations of the same Rules of Professional Conduct. *See e.g., Lawyer Disc. Bd. v. Thompson*, 238 W. Va. 745, 798 S.E.2d 871 (2017) (three month suspension for failure to provide competent representation; dilatory conduct; knowingly disobeying obligations under the rules of a

---

[12] During oral argument in this matter, the ODC indicated that it was difficult to secure Mr. Evans's bank records because the initial partition suit was filed in 2014. While the record shows that this matter was not brought to the ODC's attention until June 2022, when the first complaint was filed by Margaret Shields, and while obtaining financial records that are almost ten years old might present a challenge, it is critical that the ODC thoroughly investigate all allegations of attorney misconduct. As an "administrative arm" of this Court as it pertains to our constitutional authority to regulate and control the practice of law in this State, the ODC is tasked with conducting investigations to determine if probable cause exists to substantiate any allegations of attorney misconduct and ethical violations. Indeed, a thorough investigation on the part of the ODC is an essential step in all disciplinary proceedings which serve to safeguard the public's interest in the administration of justice.

11

tribunal; and engaging in conduct prejudicial to the administration of justice); *Lawyer Disc. Bd. v. Sturm*, 237 W. Va. 115, 785 S.E.2d 821 (2016) (ninety-day suspension imposed for failure to timely file habeas corpus petition, failure to communicate with client; and failure to properly deposit retainer fee in client's trust account); *Committee on Legal Ethics v. Karl*, 192 W. Va. 23, 449 S.E.2d 277 (1994) (three month suspension for failure to act with reasonable diligence, failure to communicate effectively with clients, and failure to respond to disciplinary authority's repeated requests for information). Accordingly, we adopt the HPS's recommended sanctions.

For the reasons set forth above, Mr. Evans's law license shall be suspended for a period of three (3) months with automatic reinstatement of his license to practice law pursuant to the provisions and requirements of Rule 3.31 of the Rules of Lawyer Disciplinary Procedure. Upon reinstatement, Mr. Evans shall be placed on one (1) year of supervised practice by an active attorney in his geographic area in good standing with the West Virginia State Bar and agreed upon by the ODC. The goal of the supervised practice will be to improve the quality and effectiveness of Mr. Evans's law practice to the extent that Mr. Evans's sanctioned behavior is not likely to recur. Mr. Evans shall be required to take an additional six (6) hours of Continuing Legal Education in the area of legal ethics and law office management during the 2024-2026 reporting period and Mr. Evans shall be required to pay the costs of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Law license suspended and other sanctions imposed.

**ISSUED:** November 5, 2025

**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison

12