IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2024 Term

_____

No. 22-916

_____

FILED

March 21, 2024

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LAWYER DISCIPLINARY BOARD,
Petitioner,

v.

JEFFERY A. DAVIS,
Respondent.

_____

Lawyer Disciplinary Proceeding
Nos. 21-03-363 and 22-03-255

LAW LICENSE SUSPENDED AND OTHER SANCTIONS IMPOSED
_____

Submitted: February 7, 2024
Filed:  March 21, 2024

Rachael L. Fletcher Cipoletti, Esq.
Chief Lawyer Disciplinary Counsel
Renee N. Frymyer, Esq.
Lawyer Disciplinary Counsel
Office of Disciplinary Counsel
Charleston, West Virginia
Counsel for the Petitioner

Michael D. Dunham, Esq.
Shuman McCuskey Slicer PLLC
Winchester, Virginia
Counsel for the Respondent

JUSTICE WOOTON delivered the Opinion of the Court.

1.      "A *de novo* standard applies to a review of the adjudicatory record made before the [Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Hearing Panel Subcommittee's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Hearing Panel Subcommittee's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record."  Syl. Pt. 3, *Comm. on Legal Ethics of the W. Va. State Bar v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

2.      "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Comm. on Legal Ethics of the W.Va. State Bar v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

3.      "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer

has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'" Syl. Pt. 4, *Off. of Law. Disciplinary Couns. v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

4. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. Pt. 4, *Law. Disciplinary Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

5. "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. Pt. 2, *Law. Disciplinary Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

6. "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syl. Pt. 3, *Comm. on Legal Ethics of W. Va. State Bar v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).

**WOOTON, Justice:**

This is a lawyer disciplinary proceeding brought against the respondent Jeffrey A. Davis, a member of the West Virginia State Bar, arising out of a two-count Statement of Charges issued against him by the Investigative Panel of the Lawyer Disciplinary Board ("the Board") and brought to this Court by the Office of Disciplinary Counsel ("ODC") on behalf of the Board. The Board's Hearing Panel Subcommittee ("HPS") determined that the respondent committed multiple violations of the West Virginia Rules of Professional Conduct ("Rules").[1] The HPS recommended that the respondent's law license be suspended for a period of three years, served retroactively based on this Court's March 14, 2022, mandate suspending the respondent's law license for a six-month period in a separate disciplinary matter,[2] in addition to other sanctions.[3]

---

[1] Specifically, the HPS found that the respondent violated Rule 1.4(a)(4) and Rule 8.4(a) and (d) in regard to Count I and Rules 1.3, 3.2, and 1.16(d) in regard to Count II.

[2] At the time the subject charges were filed, the respondent's law license had been suspended for a six-month period pursuant to a March 14, 2022, mandate issued by this Court in a separate disciplinary matter. *See Law. Disciplinary Bd. v. Davis*, 2022 WL 421119 (W. Va. filed Feb. 11, 2022) (memorandum decision) (involving six violations of the West Virginia Rules of Professional Conduct arising from a single disciplinary complaint filed on November 20, 2020, concerning respondent's failure to communicate and timely file motions in a privately retained criminal matter). Following completion of the six-month suspension, on August 26, 2022, the respondent filed a petition seeking to reinstate his law license pursuant to Rule 3.32 of the West Virginia Rules of Lawyer Disciplinary Procedure. On March 30, 2023, the HPS filed its report with the Court in which it recommended that the respondent's license not be reinstated. On May 12, 2023, the Court entered an order adopting the HPS's recommendation to deny the respondent's petition for reinstatement.

[3] *See infra* discussion.

1

The ODC consented to the HPS's recommendation. The respondent objected to the recommendation and, accordingly, this Court scheduled the matter for oral argument with briefs to be submitted by the parties in support of their respective positions.

This Court has now carefully considered the parties' written and oral arguments, the submitted record, and the pertinent authorities. Upon our review, we find that the record and law support the HPS's report, and we adopt the report and recommended sanctions contained therein.

## I. Facts and Procedural Background

The respondent was admitted to the practice of law in West Virginia in 1993, and last practiced in Spencer, West Virginia. He has a lengthy disciplinary history.

After two formal charges, as described more fully below, were filed against the respondent, the HPS conducted a hearing in May, 2023, wherein the respondent and the two complainants testified. In addition, the ODC submitted several exhibits and the parties submitted stipulations regarding certain findings of fact, conclusions of law, and recommendation as to discipline, which were admitted into evidence during the hearing without objection. The following is a summary of the evidence regarding the two counts.

2

## A.    Count I

This count involved the respondent's court-appointed representation of a defendant, Samantha Shafer, in a criminal case.[4]  The evidence established that on October 25, 2021, Ms. Shafer submitted a document to the circuit court, which the court referred to as a "pro se motion," following a hearing involving Ms. Shafer's entry of a guilty plea and sentencing.[5]  In the motion, Ms. Shafer stated that the respondent made sexual overtures toward her and had asked her "if [she] wanted to go to the beach with him while [she] was his client."  She requested that the court appoint her a new public defender. The court replaced the respondent as Ms. Shafer's counsel the next day.  On November 2, 2021, the circuit court sent Ms. Shafer's motion to ODC, which opened a complaint.

The respondent answered the complaint, denying any wrongdoing.  He indicated that his representation of Ms. Shafer had resulted in a plea agreement whereby she entered a guilty plea.  After the plea was entered, but before she was sentenced, she reviewed her pre-sentence investigation ("PSI") report and became angry.  She was told by

---

[4]The evidence showed that Ms. Shafer was charged with several counts in two different indictments:  the first indictment included counts for third offense shoplifting, conspiracy to commit a felony, obtaining money by false pretense, and conspiracy to commit a misdemeanor; the second indictment included counts for burglary, grand larceny, and two counts of conspiracy to commit a felony.

[5] The respondent negotiated a plea deal for Ms. Shafer in which she pled guilty to one count of grand larceny, one count of third offense shoplifting, and one count of first offense shoplifting, which was a misdemeanor.  Communications broke down when Ms. Shafer's bond was revoked and she was placed in jail due to a failed drug test.

3

a probation officer that in order to be considered for alternative sentencing she had to enroll in a drug rehabilitation facility because she had failed a prior drug screen.[6] The respondent indicated that he discussed this issue with Ms. Shafer on October 25, 2021, and she told him that she regretted entering the plea because she did not want to go to drug rehabilitation. Ms. Shafer then filed the "pro se motion" seeking his removal from her case and the circuit court replaced him as her counsel.

At the respondent's disciplinary hearing, Ms. Shafer testified that while representing her, the respondent picked her up in his vehicle and took her and her son[7] to get food. After getting food, the respondent then drove to an abandoned school parking lot and parked the car so that they could talk. She stated that the respondent never discussed her case with her but they talked about trips, and he offered to take her on an all-expense paid trip to the beach. She felt the conversation was inappropriate and unprofessional. She stated that he also gave her compliments on her looks. She testified that she was under the impression the respondent was flirting with her and had she reciprocated, she would have been given different legal representation: "I feel like if I would have went along with it, that I would have been represented differently." Instead, she stated that he would not

<hr />

[6] While Ms. Shafer was out on bond before she entered the guilty plea she had a positive drug screen and the circuit court revoked her bond. Her bond was later reinstated as a result of the respondent filing a motion to reinstate bond.

[7] Ms. Shafer's son was not called as a witness at the disciplinary hearing. Also, the respondent disputed that Ms. Shafer's son was with her when he picked her up.

discuss her case with her despite her case involving several serious felony charges. Further, after Ms. Shafer's bond was revoked, she was incarcerated for about six weeks before she was re-released when her bond was reinstated. She testified that during this time, the respondent made no attempt to contact her and he never answered her phone calls even though she placed a call to his office every day.[8] She stated that she was able to speak with the respondent on three occasions while she was incarcerated, when another individual called the respondent on her behalf with her on the line as a third party.[9]

The respondent also testified at the hearing and denied making flirtatious comments to Ms. Shafer or offering to take her on an all-expense paid trip to the beach. In regard to the comments, he stated that on one occasion he told Ms. Shafer that she looked nice because she was dressed appropriately for court. In regard to the beach trip, the respondent testified that he never offered to take Ms. Shafer to the beach. However, he stated that in an attempt to calm Ms. Shafer down when she was nervous and upset about going to prison, he told her to think of a place that made her happy and where she could forget her troubles. When Ms. Shafer responded that she liked the beach, he told her to think about the beach. The respondent also testified that he believed that he had adequately communicated with Ms. Shafer during her incarceration and that it would have been a

---

[8] Ms. Shafer testified that prior to her incarceration the respondent would return her calls when she left messages within "a couple days later."

[9] There is no evidence that these three telephone conversations concerned anything other than her case.

"waste of time and the state's money" to visit with her while she was in jail. He stated that he did not accept collect calls from jail and only communicated with her as a result of a three-way call in which she was joined into the call. Specifically, the respondent denied that he engaged in any misconduct in regard to Ms. Shafer.[10]

Based upon evidence offered in regard to Count I, the HPS found that because the respondent failed to respond to Ms. Shafer's phone calls while she was incarcerated, he violated Rule of Professional Conduct 1.4.[11] The HPS also found that the respondent made "unwelcome advances in an attempt to create an inappropriate relationship of a sexual nature with his court-appointed client" in violation of "Rule 8.4(a) and (d)[12] [attempted violation of Rule 1.8(j) of the Rules of Conduct]."[13] (Footnote added.).

---

[10] The respondent and the ODC entered into "Stipulations Regarding Certain Findings of Fact, Conclusions of Law and Recommendations as to Discipline" ("stipulations"), which were admitted into evidence at the respondent's disciplinary hearing. *See infra* discussion. The respondent declined to stipulate to any violation of the Rules of Professional Conduct pertaining to Ms. Shafer.

[11] Rule 1.4 (a) provides, in part: "(a) A lawyer shall: . . . (4) promptly comply with reasonable requests for information[.]"

[12] Rule 8.4 provides: "It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; . . . [or] (d) engage in conduct that is prejudicial to the administration of justice[.]"

[13] Rule 1.8 (j) provides:

> A lawyer shall not have sexual relations with a client whom the lawyer personally represents during the legal representation unless a consensual sexual relationship existed between them at the commencement of the lawyer/client

6

## B.    Count II

The second count arose from a complaint that ODC received from Cletis W. Rogers on July 7, 2022, in which Mr. Rogers stated that he had entered into an agreement with the respondent to represent him in a civil matter and that he had paid the respondent $500 to file an injunction on his behalf.  Mr. Rogers claimed that the respondent had not filed the injunction and he wanted his money refunded.

In response to Mr. Rogers' complaint, the respondent stated that he had agreed to represent him in September, 2021, to seek an injunction in regard to a blocked right of way involving Mr. Rogers' property.  Mr. Rogers told the respondent that he wanted to use the right of way to haul timber cut on his land.  Mr. Rogers paid the respondent $500 for his representation.  The respondent stated that Mr. Rogers told him in the fall or early winter of 2021 that there was no rush in filing the action because the weather would be bad until spring. The respondent admitted that he had had no communications with Mr. Rogers until Mr. Rogers filed suit against him in magistrate court in December of 2021.  Mr. Rogers testified in magistrate court that he never instructed the respondent to wait until spring to bring the action.  On March 7, 2022, the magistrate court

relationship.  For purposes of this rule, "sexual relations" means sexual intercourse or any touching of the sexual or other intimate parts of a client or causing such client to touch the sexual or other intimate parts of the lawyer for the purpose of arousing or gratifying the sexual desire of either party or as a means of abuse.

awarded Mr. Rogers $700 ($500 refund plus $200 filing fee). The respondent did not satisfy the civil judgment owed to Mr. Rogers until December 8, 2022.

Unlike the allegations involving Ms. Shafer, the respondent stipulated that he had "neglected Mr. Rogers' case and failed to take appropriate action" in violation of Rule 1.3,[14] "failed to make reasonable efforts consistent with the stated and agreed upon objectives of Mr. Rogers" in violation of Rule 3.2,[15] and "failed to promptly return the unearned fee paid to him by Mr. Rogers upon termination of representation" in violation of Rule 1.16(d).[16]

---

[14] Rule 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[15] Rule 3.2 provides that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client."

[16] Rule 1.16(d) provides:

> (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

Based on the evidence, the HPS proceeded to consider the appropriate sanctions to be imposed in light of the violations it found.[17] *See* Syl. Pt. 4, *Off. of Law. Disciplinary Coun. v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998) (setting forth factors to be considered in imposing sanctions and discussed *infra* in greater detail); *accord* W. Va. R. Law. Disciplinary Proc. 3.16. Specifically, the HPS found that the clear and convincing evidence established that the respondent violated the duties that he owed to his clients and the profession. The HPS also found that the respondent "acted in a negligent manner in these matters." The HPS considered the fact that the respondent's actions "caused frustration and delay on the part of Mr. Rogers[,]" and Ms. Shafer testified that she felt "abandoned" and "did not feel Respondent was on her side." In regard to the aggravating and mitigating factors, the HPS found the respondent had aggravating factors of prior disciplinary offenses, including thirty-three complaints, eight disciplinary sanctions consisting of six admonishments and two suspensions over a fifteen-year period, and substantial experience in the practice of law. The HPS found the respondent's cooperative attitude towards the proceedings to be a mitigating factor.

---

[17] We note that the respondent and ODC agreed to recommended sanctions that included, inter alia, a one-year license suspension, "served retroactively based on the Supreme Court's Mandate of March 14, 2022, which suspended Respondent's license to practice for six months." However, the parties also stipulated that this Court is "the final arbiter in lawyer disciplinary matters" and that we can impose sanctions "which may differ from those stipulated or those recommended by the [HPS]." For reasons discussed *infra* in greater detail, the HPS (and this Court) declined to adopt the recommended one-year suspension as a sanction.

The HPS then recommended the following sanctions:

1) Respondent's law license be suspended for a period of three years, served retroactively based upon the Supreme Court's Mandate of March 14, 2022, which suspended Respondent's license to practice law for six months.

2) That Respondent['s] petition for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure [be denied [until] . . . [he] undergo[es] a psychological evaluation with confirmation of his ability to practice law.  Should he be reinstated to the practice of law pursuant to those proceedings, that Respondent's practice be supervised for a period of two years by an attorney agreed upon by the ODC and Respondent;[18]

3) Respondent shall pay the costs of this disciplinary proceeding to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

(Footnoted added).

The ODC consented to the HPS's recommendation and the respondent filed

a general objection to the "recommended disposition, findings and conclusions" by the

HPS, which caused the case to be placed on the Court's docket.

---

[18] The language of the HPS's sanction in regard to the reinstatement read, in part, as follows:  "That Respondent petition for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure be denied.  That Respondent undergo a psychological evaluation with confirmation of this ability to practice law."  This phrasing is awkward, at best, and necessitated the modification indicated above.

## II. Standard of Review

In lawyer disciplinary proceedings, this Court reviews the report by the HPS, including its recommended sanctions, under the following standard of review:

> A *de novo* standard applies to a review of the adjudicatory record made before the [Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Hearing Panel Subcommittee's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Hearing Panel Subcommittee's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. Pt. 3, *Comm. on Legal Ethics of the W. Va. State Bar v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994). While affording respectful consideration to the recommendations made by the HPS, we have held that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Comm. on Legal Ethics of the W.Va. State Bar v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984). With these standards in mind, we proceed to the merits of this matter.

## III. Discussion

The respondent argues that the HPS erred in its factual findings and in concluding that he violated Rules 1.4 and 8.4 of the Rules of Professional Conduct

involving Ms. Shafer.[19]  In regard to the factual findings made by the HPS, the respondent contends that they "were incorrect, unsound, and not supported by clear and convincing evidence on the whole adjudicatory record and should thereby be overturned."  He specifically targets the HPS's credibility determinations, contending that the HPS "surprisingly found" Ms. Shafer's testimony to be more reliable than his despite his contention that "much of Shafer's testimony was verifiably false or unreliable[]" and "unsubstantiated."  In support of this argument, the respondent rehashes the evidence that was considered by the HPS and arbitrarily selects various statements made either by him or Ms. Shafer to show that the HPS erred in affording Ms. Shafer's testimony more weight because, according to the respondent, she was not being truthful and he was.  The respondent also contends that Ms. Shafer's memory of the events was "vague" and he insinuates that her testimony pertaining to events that transpired before her incarceration was hindered by her "testing positive for marijuana and methamphetamines."

This Court gives "substantial deference . . . to the [HPS's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record."  *See McCorkle*, 192 W. Va. at 287, 452 S.E.2d at 378, Syl. Pt. 3.  Further, the HPS "hears the testimony of the witnesses firsthand and, being much closer to the pulse of the hearing, is much better situated to resolve such issues as credibility."  *Id.* at 290, 452

---

[19] The respondent stipulated to the factual findings and rule violations pertaining to Count II involving Mr. Rogers and therefore makes no argument as to the HPS's report in regard to Count II.

S.E.2d 377 at 381. Based on our review of the record in this case, we find that the findings of fact made by the HPS were supported by "reliable, probative, and substantial evidence"; therefore, we decline the respondent's invitation to disturb them.

Next, the respondent argues that the HPS erred in determining that he violated Rules 1.4[20] and 8.4[21] of the Rules of Professional Conduct. The respondent contends that he did not violate Rule 1.4 – which requires a lawyer to "promptly comply with reasonable requests for information" – simply because he "failed to respond to Shafer's phone calls while she was incarcerated" as found by the HPS. The respondent argues that he communicated with Ms. Shafer on multiple occasions while she was incarcerated. Thus, he contends that his failure to answer her daily phone calls is not a violation of the requirement of Rule 1.4 to comply with "*reasonable* requests for information." (Emphasis added).

We are mindful of the fact that the HPS found that the evidence supported that the respondent did speak with Ms. Shafer on three occasions during the six-week period in which she was incarcerated and that the respondent "testified that he believed he had adequately informed her on the status of the matter[.]" However, in support of its determination that the respondent violated Rule 1.4, the HPS focused upon the

---

[20] *See supra* note 11.

[21] *See supra* note 12.

13

respondent's failure to visit Ms. Shafer while she was incarcerated, stating that it "would just be a waste of time and the state's money[,]" the respondent's explanation that "he did not accept collect calls from jail and that he did not believe that his landline could take collect calls[,]" and his failure "to respond to Ms. Shafer's phone calls while she was incarcerated[.]" The HPS found that "the only time she was able to speak with Respondent was when another individual called him on her behalf with her on the line as a third party[]" and that "they spoke in this manner on maybe three occasions." Thus, the HPS's determination that a violation of Rule 1.4 occurred in this case was based on its factual findings that the respondent failed to "promptly comply" with her repeated phone calls to him seeking information about her case, in that he never initiated a return phone call to Ms. Shafer or visited with her while she was incarcerated. *See* W. Va. R. Pro. Conduct 1.4(a)(4). The Court declines to find that the HPS erred in regard to its determination that the respondent violated Rule 1.4.[22]

Also, in regard to the respondent's contention that the clear and convincing evidence failed to establish that he "attempted to create an inappropriate relationship of a sexual nature with Shafer[,]" he again focuses on Ms. Shafer's credibility by arguing that she was being untruthful and he was being truthful. It was within the purview of the HPS to determine whether a violation of Rule 8.4 (a) and (d) occurred, based upon its

---

[22] Our adoption of the HPS's determination that Rule 1.4 was violated is limited to the specific facts of this case and should not be read to suggest that three phone calls with a client over a six-week period is per se evidence of a violation of that rule.

14

consideration of Ms. Shafer's description of the respondent's comments to her about going to the beach while they were meeting in the respondent's car that was parked in the parking lot of an abandoned school, as well as his comments to her about her clothing, which she viewed as flirtatious. The HPS determined that these comments were "unwelcome advances in an attempt to create an inappropriate relationship of a sexual nature with his court-appointed client" in violation of Rule 8.4(a) and (d). Ms. Shafer was the respondent's client in a felony criminal matter, and she was depending on him to protect her liberty. Under our de novo review, we conclude that the "reliable, probative, and substantial evidence" supports the finding that the respondent violated Rule 8.4(a) and (d) of the Rules of Professional Conduct, as determined by the HPS. *See McCorkle*, 192 W.Va. at 287, 452 S.E.2d at 378, Syl. Pt. 3.

Finally, with no supporting legal authority or discussion of facts supporting his position, the respondent argues that the recommended disposition of suspension for three years is two years "greater than the stipulated proposed disciplinary recommendation, [and] is excessive as it gives deference to [Ms.] Shafer's testimony and is not supported by clear and convincing evidence. Moreover, [the respondent] has taken accountability for his actions that did violate the Rules of Professional Responsibility . . . ."

In regard to the HPS's recommended sanction of a three-year suspension, we are guided by our holding in syllabus point four of *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998):

15

Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Based on the factors set forth in Rule 3.16 and *Jordan*, the HPS found that the respondent violated duties he owed to his clients and the profession. The respondent admitted that he violated the duty he owed to Mr. Rogers to diligently pursue the injunction action he was retained to pursue. Further, the HPS determined that the respondent failed to "reasonably communicate" with Ms. Shafer and "initiat[ed] intimate and unprofessional conversations with her," falling short of his "duties and fiduciary role" with his client in a felony case. As discussed *supra* in greater detail, we agree with the HPS's conclusions that the respondent violated duties owed to his client and the profession.[23] We also agree with the HPS's determination that "[t]he evidence is clear and convincing that Respondent

---

[23] In regard to the duties owed to the profession, the HPS relied upon a lawyer's "duties of candor, loyalty, diligence and honesty to their clients," the fiduciary duties owed to clients and the obligation to act in their best interests, the duty to maintain the integrity of the profession, and that "[m]embers of the public should be able to rely on lawyers to protect their property, liberty, and their lives[,]" finding that "[t]he evidence in this case establishes by clear and convincing proof that Respondent violated these duties." We adopt HPS's determination in this regard.

16

acted in a negligent manner in these matters." As to the amount of injury caused by the respondent's misconduct, the HPS determined that his conduct "caused frustration and delay" on Mr. Rogers' part, and because Mr. Rogers indicated that he no longer trusts lawyers, the respondent "brought the legal system and legal profession into disrepute." In regard to Ms. Shafer, the HPS found that she suffered "emotional injuries," that were "intangible," but "nonetheless significant." The HPS based this conclusion, in part, on her testimony that "she did not feel Respondent was on her side." We agree with the HPS's findings and conclusions in regard to the first three *Jordan* factors. *See id.*

Finally, the HPS considered the aggravating and mitigating factors present. This Court held in syllabus point four of *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003), that "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." In regard to aggravating factors, the HPS found that the respondent had a long history of prior disciplinary offenses. The respondent had been the subject of thirty-three complaints and eight disciplinary sanctions, including six admonishments and two suspensions. The HPS also found the respondent's substantial experience in the practice of law to be an aggravating factor. We also held in syllabus point two of *Scott*, that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." *Id.* at 209, 579 S.E.2d at 550, Syl. Pt. 2. The HPS noted that the respondent's "cooperative attitude toward the proceedings may be considered in mitigation." We also agree with the HPS's

17

evaluation of the aggravating and mitigation factors present in this case. *See Jordan*, 204 W. Va. at 497, 513 S.E.2d at 724, Syl. Pt. 4.

Based on its assessment of the *Jordan* factors, the HPS recommended that a three-year suspension be imposed and served retroactively to the Supreme Court's Mandate of March 14, 2022, which suspended the respondent's license to practice law for six months. In syllabus point three of *Committee on Legal Ethics of West Virginia State Bar v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987), this Court held:

> In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

In addition, a fundamental purpose of attorney disciplinary proceedings is to safeguard the public's interest in the administration of justice. *See Off. of Law. Disciplinary Couns. v. Albers*, 214 W. Va. 11, 13, 585 S.E.2d 11, 13 (2003) ("Because of the enormous amount of trust that the public places in its lawyers, this Court must insure that the public's interests are protected and that the integrity of the legal profession is maintained."). Here, the respondent and the ODC agreed that the respondent should be suspended based on his conduct, and proposed a nonbinding recommended disposition of a one-year suspension. However, in its report the HPS recommended a three-year suspension as a more appropriate sanction, due to the "long history of misconduct exhibited

18

by the Respondent, including 33 complaints, 8 disciplinary sanctions, 6 admonishments, and 2 suspensions over a 15-year period." The HPS noted that "[t]he entire record demonstrates an ongoing pattern of misconduct that has not been corrected by past minimal sanctions[]" and found the parties' proposed stipulated sanction of one year to be "insufficient."

We agree; the HPS's recommended sanctions, including a three-year suspension, are consistent with this Court's obligation to protect the public interest and dissuade similar conduct in the future. *See, e.g., Comm. on Legal Ethics of the W. Va. State Bar v. Keenan*, 189 W. Va. 37, 427 S.E.2d 471 (1993) (imposing suspension for an indefinite period for engaging in a pattern and practice of failing to communicate with clients, to act with reasonable diligence, to keep clients reasonably informed, and to return unearned fees); *Law. Disciplinary Bd. v. Morgan*, 228 W. Va. 114, 717 S.E.2d 898 (2011) (imposing one year suspension for violation of Rules 1.3, 1.4, 8.1(b), 8.4(d), and other violations); *Law. Disciplinary Bd. v. Rossi*, 234 W. Va. 675, 769 S.E.2d 464 (2015) (imposing three-year suspension for violation of Rules 1.3, 1.4, 8.1(b), 8.4(d), and other violations). Upon consideration of the facts and circumstances in this case, we agree with the HPS that the public, the legal system, and the profession will be best served by the imposition of the sanctions recommended by the HPS, and accordingly adopt each recommended sanction, including a three-year suspension of the respondent's law license.

## IV. Conclusion

For all the foregoing reasons, we order the following sanctions:

A.  Respondent's law license be suspended for a period of three years, served retroactively based upon the Supreme Court's Mandate of March 14, 2022, which suspended Respondent's license to practice law for six months.[24]

B.  That Respondent's petition for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure be denied until he undergoes a psychological evaluation with confirmation of his ability to practice law. Should he be reinstated to the practice of law pursuant to those proceedings, that Respondent's practice be supervised for a period of two years by an attorney agreed upon by the ODC and Respondent;

C.  Respondent shall pay the costs of this disciplinary proceeding to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Law License Suspended and Other Sanctions Imposed.

---

[24] The respondent's law license shall not be reinstated before March 14, 2025.